UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

INTERLOGIC OUTSOURCING, INC., IOI
PAYROLL SERVICES, INC., IOI WEST,
INC., LAKEVIEW HOLDINGS, INC.,
LAKEVIEW TECHNOLOGY, INC.,
MODEARN, INC., and TIMEPLUS
SYSTEMS LLC,

Case No. 20-00325 (SWD)
Hon. Scott W. Dales
Chapter 11
Jointly Administered

         Debtors.

_____/

ONESOURCE VIRTUAL, INC.,

         Plaintiff,

v.

INTERLOGIC OUTSOURCING, INC., and
PRIMEPAY, LLC,

         Defendants.

_____/

Adversary Pro. No. 20-80109

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

This dispute involves competing rights to certain software referred to as "TaxEx" that the Defendant-Debtor Interlogic Outsourcing, Inc. ("Interlogic") claims through OneSource Virtual, Inc. ("OneSource") and used in its payroll processing business, prepetition, before selling that business to Defendant PrimePay, LLC ("PrimePay"), post-petition.

In 2011, Interlogic entered into an agreement with OneSource's predecessor-in-interest (Crystal Solutions, Inc.) pursuant to which Crystal agreed to develop the TaxEx software and transfer it, or some aspects of it, to Interlogic for periodic payments upon completion of negotiated

development milestones.  A dispute about the terms of the agreement arose between Interlogic and OneSource, which prompted Interlogic to file a prepetition lawsuit against OneSource in the Northern District of Indiana seeking a declaration that Interlogic, not OneSource, had ownership and copyright rights in TaxEx, the source code, improvements, modifications, and the like.  During the pretrial phase of that litigation, Interlogic filed its voluntary chapter 11 petition and promptly arranged to sell substantially all assets to PrimePay, which the Hon. Harry C. Dees, Jr.[1] approved in a sale order dated September 30, 2019 (the "Sale Order," Base Case ECF No. 359).  PrimePay now contends that it acquired through this bankruptcy sale all rights to the TaxEx software and, as Interlogic's successor, intends to intervene in the Indiana litigation.

Evidently now preferring a bankruptcy forum to the Northern District of Indiana, OneSource filed suit against Interlogic and PrimePay in the bankruptcy court for the Western District of Michigan, seeking to establish that its rights in the TaxEx software are superior to those of Interlogic – the question before the Northern District of Indiana – and superior to PrimePay – a question involving whether or to what extent Interlogic transferred its TaxEx rights to PrimePay pursuant to the Sale Order or otherwise.

PrimePay seeks dismissal of this adversary proceeding for want of subject matter jurisdiction, or abstention, characterizing the litigation as a non-core dispute between non-debtor parties that will have no effect on Interlogic, its bankruptcy estate, or its creditors.  *See* Motion of PrimePay, LLC to Dismiss for Lack of Subject Matter Jurisdiction, or, in the Alternative, for Abstention (the "Motion," Adv. Pro. ECF No. 7).

OneSource opposes the Motion; Interlogic takes no position in writing; and the court heard oral argument, by telephone due to the COVID-19 public health emergency, on March 9, 2021.

---

[1] Judge Dees was the bankruptcy judge assigned to Interlogic's bankruptcy case before he transferred the case to the Western District of Michigan in early 2020.

At the hearing, Interlogic argued in support of the Motion, but for the following reasons the court will deny it.

It is axiomatic that the jurisdiction of the bankruptcy court, like all federal courts except the Supreme Court, depends on Congressional enactment.  Bankruptcy courts have jurisdiction, derived from the district court's jurisdiction, over three statutory categories of civil proceedings: (i) those "arising under" title 11, (ii) those "arising in" a case under title 11, or (iii) those merely "related to" a case under title 11.  *See* 28 U.S.C. § 1334(b).  The first two categories lie at the "core" of a bankruptcy court's authority, but the third category ("non-core") does not.  28 U.S.C. § 157(b) and (c).

The court can hear matters "related to" the bankruptcy but only if the dispute could conceivably affect the bankruptcy estate.  *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995); *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir. 1996) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1141–42 (6th Cir. 1991) (also citing *Pacor*).[2]  PrimePay contends that the court lacks jurisdiction to resolve this adversary proceeding because there is no dispute regarding the TaxEx software that could affect the bankruptcy estate: "Interlogic and PrimePay agree that Interlogic sold PrimePay its ownership interest – whatever that may be – in the TaxEx Software when Interlogic and its debtors … sold substantially all their assets to PrimePay pursuant to Court Order dated September 30, 2019 … ."  Motion at ¶ 3.  Fortifying the point by reference to an unapproved settlement with Interlogic, PrimePay reports that Interlogic and PrimePay entered into an agreement about a year later, on September 22, 2020 (the

---

[2] A separate issue, going to the court's authority rather than jurisdiction, involves whether the bankruptcy court may enter a final judgment resolving such a dispute, or whether (in the absence of party consent) the district court must enter the judgment.  *Stern v. Marshall*, 564 U.S. 462 (2011), and *Wellness Int'l Network, Ltd., et al. v. Sharif*, 575 U.S. 665 (2015).

"Settlement Agreement," attached to its Motion as Exhibit F) which it says confirms that PrimePay "had and shall have sole ownership of all copyright rights and other intellectual property rights (e.g., trade secrets, trademarks, patents, know-how, software code rights, etc.) in and to the TaxEx software that [Interlogic] currently has or had as of the date of the Sale Order (September 30, 2019)." *See* Motion at ¶ 28. Based on the Sale Order and the Settlement Agreement, PrimePay contends the TaxEx software is no longer property of the estate, which if true, would undercut a finding of jurisdiction under 28 U.S.C. § 1334. PrimePay summarizes its argument:

> PrimePay has acquired whatever ownership interest Interlogic had in the TaxEx Software. The dispute over the extent and nature of this ownership interest has no impact upon any of the Debtors, or upon any of their estates.

Motion at ¶ 33. If true, it follows that the court's decision about the scope of the rights of two non-debtors would not affect Interlogic, its estate, or other creditors.

This would be a compelling argument had PrimePay and *OneSource* agreed that the TaxEx software has left the estate, but they do not. That two defendants agree on a conclusion which the plaintiff disputes does not take the issue out of contention. This very issue – whether the TaxEx software rights are within or without the estate – remains in dispute. Indeed, during the hearing, PrimePay's counsel appeared to concede that the court must first address this question before deciding whether to abstain from deciding the question of ownership originally presented to the district court in Indiana.

Nevertheless, according to the Motion as drafted if not as argued, the TaxEx software either left the estate as part of the asset sale Judge Dees approved in his Sale Order, or as part of the Settlement Agreement the court has yet to approve. Regardless, however, either mode of exit will depend on the court's construction of the Sale Order (and underlying purchase agreement), the Agreement for Transfer of Rights Related to Software, dated July 1, 2011 between Crystal

Solutions, Inc. and Interlogic Outsourcing, Inc. (the "Crystal Solutions Agreement"), and the Settlement Agreement.  This means that PrimePay cannot establish the premise of its Motion without the court first construing the operative documents, at least to some extent.

For example, if the rights to the TaxEx software are tied up in an executory contract subject to § 365, this court may construe the Sale Order as not effecting any change in ownership because that order expressly states:

> For the avoidance of doubt, nothing in this Sale Order authorizes the Debtors to assume, reject, or assume or assign their rights to the TaxEx Software as provided in that certain Agreement for Transfer of Rights Related to Software, dated July 1, 2011, by and between Crystal Solutions, Inc. and Interlogic Outsourcing, Inc.

Sale Order at ¶ 19 (emphasis added).  Because the court at no time approved Interlogic's assumption of the underlying agreement between Interlogic and OneSource (as successor to Crystal Solutions), the Sale Order probably rules out any reliance on § 365 as a basis for the transfer of rights under that agreement to PrimePay (via assumption and assignment).[3]  11 U.S.C. § 365(f)(2)(A) (assumption is prerequisite to assignment).  As noted above, during oral argument PrimePay's counsel seemed to concede that whether or to what extent the Crystal Solutions Agreement (as amended) remains executory is a threshold issue within this court's purview.

---

[3] The court assumes that OneSource believes it may secure an advantage in treating the TaxEx agreement as executory since this may give it a veto over assignment from Interlogic to PrimePay to the extent "applicable law" excuses OneSource "from accepting performance from or rendering performance to" PrimePay.  11 U.S.C. § 365(c).  The court understands that copyright licensing laws may afford OneSource such an advantage, although the parties have not briefed the issue yet.  At oral argument, PrimePay and Interlogic argued that the Crystal Solutions Agreement is not an executory contract, citing *In re Avianca Holdings S.A.*, 618 B.R. 684, 696 (Bankr. S.D.N.Y. 2020), for the proposition that where "performance remains due on only one side, the contract is non-executory, and hence, neither assumable nor rejectable."

It is, of course, true that PrimePay might have succeeded to the TaxEx software rights if, or to the extent, the original agreement was no longer executory,[4] and some rights under the agreement had ripened into property interests severable from the agreement under non-bankruptcy law,[5] but that question depends on an interpretation of the Crystal Solutions Agreement and the asset purchase agreement (including the excluded assets provisions) that Judge Dees blessed when he entered the Sale Order.  PrimePay conceded that the parties have not briefed this pivotal issue.

In other words, to determine what rights, if any, passed under the Sale Order to PrimePay, the court must interpret the original agreement, at least to determine whether or to what extent it was subject to § 365, the September 2019 asset purchase agreement, and the Sale Order.  And, just because that preliminary construction of the original agreement may depend on State law or non-bankruptcy law does not, by itself, mean that the larger question of what interest passed via the Sale Order is a non-core matter.  28 U.S.C. § 157(c) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.").  Moreover, a dispute involving the interpretation of a bankruptcy court's sale order arises in a case under the Bankruptcy Code,[6] and a dispute about the rights of OneSource under § 365 arises under title 11 – both at the core of the court's authority.

---

[4] The general rule is that a trustee or debtor in possession must assume or reject an executory contract in its entirety, but "where a single document embraces several distinct agreements, some of which are executory and some of which are fully or substantially performed, only the executory portions of the document are subject to rejection."  *Stewart Title Guar. Co. v. Old Republic Nat. Title Ins. Co.*, 83 F.3d 735, 741–42 (5th Cir. 1996).  The matter depends, in the main, on whether applicable state law permits the contracting parties to treat portions of the agreement as severable and executed, rather than executory.  Here, the eighth and final paragraph of the Agreement for Transfer of Rights Related to Software makes Indiana law the applicable law.  The parties have not briefed this issue.

[5] The Crystal Solutions Agreement filed in connection with the Motion has been heavily redacted, impeding the court's ability to determine whether or to what extent it remains executory.  Similarly, that agreement suggests that the original parties may have entered into additional agreements and instruments actually "conveying the rights and interests to IOI as provided and anticipated" in the original undertaking.  *See* Crystal Solutions Agreement at ¶ 7.  Given the procedural posture of the dispute, and without knowing whether the court has the full memorialization of the agreement before it, it is at least imprudent, if not impossible, to opine whether the agreement remains executory.

[6] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ("The Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders...").

To the extent PrimePay relies on the Settlement Agreement as the instrument effecting the transfer of Interlogic's TaxEx rights, no one has suggested that the transfer of the TaxEx software would qualify as having been made in the "ordinary course of business," and no one has suggested, nor could they, that Interlogic could indefeasibly transfer property outside the ordinary course of business without involving the court. 11 U.S.C. §§ 363(b) and 549. So, even assuming, *arguendo*, that a debtor may enter into a settlement without court approval under Rule 9019, a settlement that effects a transfer of property would nevertheless require approval under § 363(b) to be fully effective.

The court concludes that it has "arising in" and "arising under" jurisdiction given the relationship of the arguments to the Code's executory contract provisions, the bankruptcy sale process generally, and the inescapable task of interpreting the Sale Order, not to mention the effect, if any, of the unvetted Settlement Agreement. The bankruptcy court, moreover, is in a better position to apply bankruptcy precepts and to interpret the Sale Order and executory contract provisions of § 365 than another court. To the extent PrimePay grounds its Motion on want of jurisdiction, the court will deny it.

The conclusion, however, that the court has jurisdiction to determine whether or to what extent Interlogic transferred the TaxEx software does not mean that the court should determine the rights of Interlogic or PrimePay *vis a vis* OneSource. As noted above, PrimePay asks for abstention in the alternative, and abstention does not rest on a finding that the court lacks jurisdiction, but instead involves a decision to refrain from exercising jurisdiction that Congress has conferred (for reasons of efficiency, expertise, comity etc.). In other words, denying the Motion at this stage of the proceedings should leave open the possibility of abstention to permit the Northern District of Indiana to construe the rights of the parties under the agreement after the court makes the

preliminary determination regarding whether PrimePay succeeded to Interlogic's rights to the TaxEx software. This decision, of course, could be affected by developments in the base case involving assumption and assignment of the Crystal Solutions agreement (to the extent executory), outright transfer perhaps in the nature of "quit claim" transaction under § 363(b), or settlement – perhaps this time subjected to judicial scrutiny after affording notice and an opportunity for others to be heard. *See* Fed. R. Bankr. P. 9019; 11 U.S.C. § 363(b).

So, for now, the court will deny the Motion to the extent premised on lack of jurisdiction, without prejudice to renewing the request for abstention after the court determines whether or the extent to which PrimePay succeeded to Interlogic's rights in the TaxEx software under the Sale Order or otherwise.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (Adv. Pro. ECF No. 7) is DENIED with prejudice as to the jurisdiction question and without prejudice as to abstention.

IT IS FURTHER ORDERED that PrimePay, LLC, shall answer the complaint within 14 days after entry of this Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Darius C. Gambino, Esq., Sara E. D. Fazio, Esq., Jamil N. Alibhai, Esq., and John R. Humphrey, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated March 9, 2021**



Scott W. Dales
United States Bankruptcy Judge