UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

INTERLOGIC OUTSOURCING, INC.,[1]

          Debtors.

_____/

ONESOURCE VIRTUAL, INC.,

          Plaintiff,

v.

INTERLOGIC OUTSOURCING, INC., and
PRIMEPAY, LLC,

          Defendants.

_____/

Case No. 20-00325 (SWD)
Hon. Scott W. Dales
Chapter 11
Jointly Administered


Adversary Pro. No. 20-80109


MEMORANDUM OF DECISION & ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

The court held two hearings to consider OneSource Virtual, Inc.'s Motion to Compel Discovery from PrimePay (ECF No. 42, the "Motion to Compel"). The competing claims of plaintiff OneSource Virtual, Inc. ("OneSource") and PrimePay, LLC ("PrimePay") to certain software and related codes, referred to as the "TaxEx Software," lie at the center of this adversary proceeding.

---

[1] The Debtors in the IOI Cases, along with the last four digits of each Debtor's federal tax identification number are: Interlogic Outsourcing, Inc. ("IOI") (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473). The location of the IOI Debtors' headquarters is: 1710 Leer Drive, Elkhart, Indiana 46514.

More specifically, and without limiting the issues, the court must decide whether (or to what extent) the Agreement for Transfer of Rights Related to Software, dated July 1, 2011 between Crystal Solutions, Inc. and Interlogic Outsourcing, Inc., as amended (the "Crystal Solutions Agreement"), qualified as an executory contract within the meaning of 11 U.S.C. § 365[2] on the petition date, and, correspondingly whether the rights to the TaxEx Software passed to PrimePay through a bankruptcy sale approved by the Hon. Harry C. Dees, Jr. in a sale order dated September 30, 2019 (the "Sale Order").

During both hearings on the Motion to Compel, the court forecast its rulings (essentially regarding relevance) in an ultimately fruitless effort to guide the parties to a consensual settlement of their discovery dispute. At the conclusion of the second hearing on July 1, 2021, the court took the matter under advisement. For the following reasons the court will grant the Motion to Compel.

First, the parties should note that nothing in today's order resolves any claim of attorney-client privilege, although the court rejects PrimePay's assertion of the related but distinct common interest doctrine -- a doctrine aimed at preserving the attorney-client privilege against waiver through disclosure of the communication to a non-client. Even assuming, *arguendo*, that state law does not supply the rule of decision regarding the rights and obligations of the parties under the Crystal Solutions Agreement,[3] successful assertion of the common interest doctrine requires the advocate to establish not only the existence of an attorney-client communication, but a common *legal* (as opposed to *commercial*) interest. At oral argument, the court inquired about the interest supporting PrimePay's invocation of the common interest doctrine, inquiring whether the parties'

---

[2] The Bankruptcy Code is codified in 11 U.S.C. §§ 101 *et seq*. The court will refer to specific sections as "§ ___."

[3] *See* Fed. R. Evid. 501. The court previously suggested that PrimePay, as the proponent of the doctrine, had the burden of identifying which state's law governed the doctrine in this instance, but at the second hearing PrimePay's counsel relied on the federal version of the doctrine.

interest in getting a deal done were sufficient, and PrimePay's counsel answered in the affirmative. The court disagrees and regards as persuasive the decision in *10X Genomics, Inc. v. Celsee, Inc.*, 505 F.Supp.3d 334 (D. Del. 2020), specifically the District Court's conclusion that the proponent of the privilege failed to meet its burden of establishing a legal interest. In words equally applicable to the present dispute, the *10X Genomics* court observed:

> Celsee has not contended, let alone established, that it and Bio-Rad shared an identical legal interest or that its communications with Bio-Rad were made for the purpose of securing, advancing, or supplying legal representation. And, of course, that makes sense, as Celsee and Bio-Rad were not engaged in *legal strategy* sessions but instead were negotiating a *commercial transaction* from the opposite sides of a bargaining table.

*10X Genomics*, 505 F.Supp.3d at 338 (emphasis added). Even the main case upon which PrimePay relies acknowledges this distinction. *See Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 309-10 (N.D. Calif. 1987) (citing authorities for the proposition that "the key consideration is that the nature of the legal interest be identical, not similar, and be legal, not solely commercial"). Accepting PrimePay's extravagant view of the common interest doctrine would untether it from the attorney-client privilege that it is designed to preserve. The court is unwilling to expand established privileges, or recognize new ones, beyond well-settled and principled boundaries.

Second, as the court indicated in running through the requests to produce during the June 17, 2021 hearing, OneSource's discovery requests seek documents "of consequence in determining the action" that have a "tendency to make a [material] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. The extent to which the obligations of the parties remained executory depends largely on contractual intent, and because the terms of their agreements are not clear, the court will need to consider parol evidence, as noted during the hearings.

Third, the court sees no way to avoid determining whether or to what extent the Crystal Solutions Agreement qualifies as "executory" within the meaning of § 365, regardless of the "quit claim" nature of the settlement recently approved under Rule 9019.  If the agreement were entirely executory, it could not have been assigned to PrimePay under § 365 pursuant to the Sale Order, because that order expressly eschewed any assumption or assignment under § 365, even while it effected transfers under § 363(b).  If the agreement were entirely non-executory -- *i.e.*, if no material obligations remained unperformed on either side -- then IOI transferred its rights to PrimePay pursuant to the Sale Order under § 363 as confirmed through the recent settlement.  If obligations on either side of the Crystal Solutions Agreement were to some extent executory and to some extent complete, then some rights or interests may have passed to PrimePay, but others may not have transferred.  OneSource has established through the Motion to Compel and the arguments of counsel that its requests have a "tendency" to assist the court in resolving this crucial issue.  If IOI and PrimePay were discussing the particulars of the TaxEx Software during the period leading up to the sale, those discussions may, by revealing course of performance or other evidence, shed light on the main issues in this adversary proceeding.

With one caveat that the parties have so far neglected to address relating to the possible rejection of the Crystal Solutions Agreement through confirmation of IOI's plan of reorganization,[4]

---

[4] Although the court will await additional briefing or argument from the parties in connection with PrimePay's pending summary judgment or abstention motions, its previous observation about the impact of the possible rejection of the Crystal Solutions Agreement at confirmation bears repeating.  *See* Transcript of Hearing Held June 17, 2021 (ECF No. 49) at 15:25-16:5.  If that agreement were executory in full or to some extent on the petition date, there can be no doubt that all must now regard it as breached under § 365(g).  Although a debtor may not assign *under § 365* an executory contract that has been rejected (foregoing the benefits to the estate under § 365(k) or otherwise that come with assumption and assignment "under this section"), the court cannot rule out the possibility, especially after the Supreme Court's decision in *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019), that a buyer, such as PrimePay, may assume a contract under § 363 where the contract is simply a liability of the estate.  It is conceivable that such a transaction, as may have occurred in connection with the "quit claim" under the recently-approved settlement agreement, would operate much as an assignment under non-bankruptcy law, *i.e.*, without relieving the debtor of its obligations under the contract under § 365(k) but also without limiting the debtor under §

the court does not regard its recent approval of a settlement between the bankruptcy estate's liquidating trustee and PrimePay, by itself, as changing the relevance calculation. The court took pains to make clear that it did not intend to prejudge OneSource's position in this litigation by approving that settlement, and carefully used the phrase "quit claim" to make this point, arguing by analogy to real property law that a quit claim transfers only the interest that the grantor has the right to transfer, no more and no less.

With respect to the schedule of this adversary proceeding, as discussed on the record on July 1, 2021, the court will entertain a stipulation as the parties discussed extending slightly the deadlines prescribed in the Pretrial Order dated March 15, 2021 (ECF No. 22), consistent with the document production compelled through the decretal paragraphs that follow.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion to Compel is GRANTED as provided herein:

1.  PrimePay shall not withhold from its production any email or other document under the common interest doctrine and shall produce a customary privilege log for all documents withheld on a claim of privilege;

2.  As to Request Nos. 1-3 PrimePay shall, after a diligent search, produce all non-privileged emails at issue, using the search terms "transfer agreement," "transfer

---

365(c). The parties should consider whether this holds true where a debtor's obligations for breach ripen upon the rejection of a formerly executory contract. Such a result would not be inconsistent with general contract principles governing assignment of contracts outside of bankruptcy. The court is also mindful that the Crystal Solutions Agreement may have contemplated IOI's assignment to a buyer in connection with the sale of substantially all of IOI's assets as occurred through the Sale Order.

agreement amendment," "software product," "software product package," "OneSource Virtual," "OSV," and "TaxEx";

3. As to Request Nos. 11, 13, and 17-21, PrimePay shall, after a diligent search, produce all non-privileged documents responsive to these requests, not just emails, in the ordinary course, dated between August 1, 2019 and the signing of the Transition Services Agreement; and

4. PrimePay shall produce the above-mentioned emails and other documents no later than 21 days after entry of this Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision & Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Jamil N. Alibhai, Esq. and Darius C. Gambino, Esq.

**IT IS SO ORDERED.**

**Dated July 6, 2021**



Scott W. Dales
United States Bankruptcy Judge