UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

INTERLOGIC OUTSOURCING, INC.,

          Debtor.

Case No. DG 20-00325
Hon. Scott W. Dales
Chapter 11

_____/

ONESOURCE VIRTUAL, INC.,

          Plaintiff,

Adversary Pro. No. 20-80109

v.

INTERLOGIC OUTSOURCING, INC., and
PRIMEPAY, LLC,

          Defendants.

_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                   Chief United States Bankruptcy Judge

I. INTRODUCTION

The court previously denied the motion of defendant PrimePay, LLC to dismiss or abstain, but PrimePay's renewed motion, and additional developments in the lead bankruptcy case, require the court to reconsider whether to abstain from exercising its jurisdiction.[1]

For the following reasons, permissive abstention is now appropriate, and the court will grant PrimePay's Second Abstention Motion. This decision renders moot PrimePay's

_____

[1] *See* Memorandum of Decision and Order dated March 9, 2021 (Adv. Pro. ECF No. 20, the "March 9 MDO") (denying early request to dismiss or abstain); Defendant PrimePay, LLC's Motion for Abstention (Adv. Pro. ECF No. 51, the "Second Abstention Motion).

summary judgment and discovery motions and clears the way for the parties to resume the

prepetition declaratory judgment action pending in the United States District Court for the

Northern District of Indiana under Case No. 3:18-cv-300 (the "Indiana Litigation").

## II. JURISDICTION

For the reasons set forth in the March 9 MDO and the Pretrial Order dated March

17, 2021 (Adv. Pro. ECF No. 22, the "Rule 16 Order"), the court has jurisdiction to hear

this adversary proceeding, which arises within the chapter 11 bankruptcy of Interlogic

Outsourcing, Inc. ("IOI").  28 U.S.C. § 1334(a).  To the extent the court must interpret an

earlier sale order entered in IOI's bankruptcy case, or determine whether a particular

prepetition contract (described below) is an "executory contract" within the meaning of 11

U.S.C. § 365,[2] the court regards the proceeding as a "core proceeding" within the meaning

of 28 U.S.C. § 157(b)(2)(A), (N), and (O). *See In re ASPC Corp.*, 601 B.R. 766, 772

(Bankr. S.D. Ohio 2019) (bankruptcy court had constitutional authority to resolve dispute

under § 365 and dispute related to § 363 sale order); *see also* March 9 MDO ("a dispute

involving the interpretation of a bankruptcy court's sale order arises in a case under the

Bankruptcy Code, and a dispute about the rights of OneSource under § 365 arises under

title 11 – both at the core of the court's authority.").  The court regards a decision under §

365 not just as an essential tool in the reorganization process, but also as central to the

claims allowance process. *See Leasing Service Corp. v. First Tennessee Bank Nat. Ass'n*,

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  In addition, the court will refer to any Federal Rule of Bankruptcy Procedure or Federal Rule of Civil Procedure simply as "Rule ___," relying on the numbering convention for each set of rules to signal the intended reference.

826 F.2d 434, 437 (6th Cir. 1987) (identifying central focus of § 365 in determining status of claims).

Although OneSource Virtual, Inc. ("OneSource") consented to entry of a final judgment by the bankruptcy court with respect to core and non-core matters, as did IOI in accordance with the Rule 16 Order, PrimePay declined to consent to final judgment on any non-core matters. Nevertheless, because today's decision addresses only core matters, and abstains from resolving the non-core contract dispute, the court has authority to enter final judgment as provided herein.

## III. ANALYSIS

Through the Second Abstention Motion, PrimePay asks the court to refrain from interpreting the Agreement for Transfer of Rights Related to Software dated July 1, 2011, as amended in 2013 (the "Transfer Agreement") (Exhs. A and B to the Second Abstention Motion), under the standards governing permissive abstention under 28 U.S.C. § 1334(c)(1). Courts addressing similar motions have developed multi-factor tests including this articulation from the Eastern District of Michigan upon which PrimePay relies in its moving brief:

> 1) the effect or lack of effect on the efficient administration of the estate if a court abstains;
>
> 2) the extent to which state law issues predominate over bankruptcy issues;
>
> 3) the difficulty or unsettled nature of the applicable state law;
>
> 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
>
> 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7) the substance rather than form of an asserted "core" proceeding;

8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9) the burden of this court's docket;

10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11) the existence of a right to a jury trial;

12) the presence in the proceeding of nondebtor parties; and

13) any unusual or other significant factors.

*Delphi Auto. Sys., LLC v. Segway Inc.*, 519 F. Supp. 2d 662, 670–71 (E.D. Mich. 2007). At bottom, as a statutory matter, the court must decide whether to stay its hand in the interest of comity with another court or out of respect for state law. Although no single factor from any judge-made test is dispositive, the very first factor -- lack of effect of a decision on the bankruptcy proceedings -- weighs heavily in support of abstention in this matter. A brief statement of the facts leading up to the Second Abstention Motion helps to frame the issues and explain the court's decision.

Long before IOI filed its voluntary chapter 11 petition on August 10, 2019, IOI had entered into, and amended, the Transfer Agreement with Crystal Solutions, Inc. ("Crystal Solutions"), predecessor in interest to OneSource, pursuant to which Crystal Solutions agreed to develop certain software, referred to as "TaxEx," for IOI's use in its payroll processing business. *See* Transfer Agreement. IOI and Crystal Solutions agreed that the latter would develop the software, and transfer it (or some aspects of it) to IOI for periodic

payments measured by the completion of negotiated development milestones. Later, OneSource assumed the contract between Crystal Solutions and IOI. Crystal Solutions is not a party to this proceeding.

In a dispute that predates the bankruptcy proceedings, IOI and OneSource held different views about their respective rights and obligations under the Transfer Agreement, and with respect to the TaxEx software. They both sought declaratory relief in the Indiana Litigation through claims and counterclaims. IOI contended that it, not OneSource, had ownership and copyright rights in the TaxEx software package, the source codes, improvements, modifications, and the like.

The filing of IOI's voluntary chapter 11 petition on August 10, 2019, however, automatically stayed the Indiana Litigation, and IOI turned its attention to arranging a bankruptcy sale of substantially all of its assets. Early in the chapter 11 case, while the bankruptcy remained pending in the Northern District of Indiana's bankruptcy court, the Hon. Harry C. Dees, Jr.[3] approved the sale of substantially all of IOI's assets to PrimePay under § 363 in a sale order dated September 30, 2019 (the "Sale Order," Base Case ECF No. 359).

PrimePay contends that, through the Sale Order, it acquired all rights to the TaxEx software, and as the successor to IOI's rights under the Transfer Agreement, it intends to intervene in the Indiana Litigation to pursue the declaratory relief that IOI originally pursued prepetition. OneSource, on the other hand, argues that the Transfer Agreement,

---

[3] Judge Dees was the bankruptcy judge assigned to IOI's bankruptcy case before he transferred the case and all related proceedings to the Western District of Michigan in early 2020.

despite its title, did not transfer quite as much as IOI (and now PrimePay) believed, and in any event, it did not divest OneSource of its interest in the TaxEx software package.

The dispute has its roots, as many disputes do, in opaque contractual language, here in the very first paragraph of the Transfer Agreement.  In its Complaint (Adv. Pro. ECF No. 1), OneSource identifies what the court regards as the original kernel of the controversy about the meaning of the Transfer Agreement and competing rights to the TaxEx software package:

> Pursuant to the Transfer Agreement, Crystal agreed "to sell, transfer and assign to IOI ownership rights to all software codes and copyright ownership for the Software Product and all codes and copyrights related to future improvements, modifications, enhancements and maintenance of the Software Product (collectively the "Software Product Package"), **subject to the following**" limitations: "(a) **Developer [Crystal] shall retain unlimited rights to own**, develop, use, license and resell the software Product Package as it sees fit, and (b) IOI may use the Software Product Package in the conduct of its business, provide the same for use in the business of its affiliates and may transfer its rights to any party acquiring a material portion [sic] the business and/or assets of IOI or its affiliates." Transfer Agreement ¶ 1.

Complaint at ¶ 10 (original emphasis).  Although the meaning of this language will be an issue for another tribunal (or better yet, for the parties themselves if they decide to meaningfully pursue settlement), the simultaneous transfer and retention of ownership rights does strike the court as ambiguous.  The rights of the parties are unclear, and the litigious nature of the parties likely makes declaratory relief regarding the contract terms inevitable.

Before any court can reach that question, however, this court must resolve the two related bankruptcy issues that have consumed most of the attention in this adversary

proceeding: (i) whether or to what extent the Transfer Agreement qualified as an executory contract;[4] and (ii) whether or to what extent IOI transferred its rights in the TaxEx Software and Transfer Agreement to PrimePay under the Sale Order or otherwise.[5]

These threshold bankruptcy issues are related because, during the proceedings before Judge Dees leading to the entry of the Sale Order, IOI tried to resolve OneSource's objection to the sale by including in the Sale Order the following language:

> For the avoidance of doubt, nothing in this Sale Order authorizes the Debtors to assume, reject, or assume or assign their rights to the TaxEx Software as provided in that certain Agreement for Transfer of Rights Related to Software, dated July 1, 2011, by and between Crystal Solutions, Inc. and Interlogic Outsourcing, Inc.

Sale Order at ¶ 19. PrimePay takes the position that because the Transfer Agreement was not "executory" on the petition date, this language, though accurate, did not prevent the transfer of the TaxEx software rights under § 363 (as opposed to § 365) because those rights had already vested, prepetition, in IOI. Thereafter, evidently in an effort to shore-up its position that it succeeded to all of IOI's rights in the TaxEx software, PrimePay and IOI entered into a settlement (the "Settlement Agreement") in which those entities agreed that IOI conveyed to PrimePay whatever interest or rights it had in the TaxEx software or in the Transfer Agreement pursuant to the Asset Purchase Agreement as approved by the Sale Order, and for the avoidance of doubt, pursuant to the Settlement Agreement itself. *See* Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement

---

[4] An executory contract is one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *Terrell v. Albaugh*, 892 F.2d 469, 471 n. 2 (6th Cir.1989).

[5] The Rule 16 Order also included as an issue the respective rights of the parties under the Transfer Agreement (the issue to be resolved in the Indiana Litigation).

Agreement Among the Debtors and PrimePay, LLC, (II) Limiting Notice of the Motion, and (III) Granting Related Relief (Base Case ECF No. 1545, the "9019 Motion"). For its part, in the order confirming IOI's chapter 11 plan, the court made clear that the "Plan Proponents are not seeking to assume or assume and assign any agreement between any Debtor and OneSource or the TaxEx Software through the Plan or this Confirmation Order." *See* Findings of Fact, Conclusions of Law, and Order Confirming Amended Joint Chapter 11 Plan of Liquidation For (I) Najeeb Ahmed Khan, (II) Khan Aviation and Its Jointly Administered Debtors, and (III) Interlogic Outsourcing and Its Jointly Administered Debtors (Base Case ECF No. 1610) at ¶ 31.

OneSource, in contrast, takes the position that the Transfer Agreement is an executory contract, and that § 365 bars IOI from assigning it to PrimePay because IOI has not assumed the agreement (§ 365(f)(2)) and because applicable law allegedly excuses OneSource from accepting performance from anyone other than IOI (§ 365(c)).

The court granted the 9019 Motion, which it regarded as in the nature of a "quit claim" transaction, part of "an effort to transfer whatever remaining interests may be transferred in the TaxEx software as permitted by applicable law . . ." *See* Memorandum of Decision and Order dated June 21, 2021 at p. 5 (Base Case ECF No. 1696). Although the court did not purport or intend to resolve the current adversary proceeding by granting the 9019 Motion, it nevertheless predicted that the approval of the Settlement Agreement "may result in PrimePay's obtaining whatever rights the Liquidating Trustee has in contracts that have been rejected." *Id.* In effect, the court reserved decision on the question of whether § 365 impeded, or continues to impede, IOI's efforts to transfer to PrimePay, the Transfer Agreement and its interest in the TaxEx software package, whatever those

interests may be.  Today's decision answers that question, and the answer points toward abstention.

Shortly after the court granted the 9019 Motion, PrimePay filed the Second Abstention Motion, picking up on the court's earlier observation that it might consider revisiting the question based on later "developments in the base case involving . . . outright transfer perhaps in the nature of [a] 'quit claim' transaction under § 363(b), or settlement . . ." *See* March 9 MDO at p. 8.  As presaged during the hearing on the 9019 Motion, and in a later order addressing a recent discovery dispute, the scheduling order for the Second Abstention Motion directs the parties to discuss the effect of the confirmation of IOI's chapter 11 plan[6] and its "deemed rejection" of remaining executory contracts.

After giving the parties the chance to be heard on the question, the court has concluded that the transfers effected either under the Sale Order, or the Settlement Agreement after plan confirmation, render it unnecessary to decide whether the Transfer Agreement was executory on the petition date because at this point in the proceedings § 365 no longer has any role to play.

First, Sixth Circuit law provides that "[r]ejection does not require 'the reversal or undoing of already executed provisions' because § 365 'does not have any impact upon the executed portions of a contract.'" *Lawrence v. Commonwealth of Kentucky Transportation Cabinet (In re Shelbyville Rd. Shoppes, LLC)*, 775 F.3d 789, 797 (6th Cir. 2015) (citations omitted).  In harmony with a general precept that state law will supply the rule of decision

---

[6] *See* Amended Joint Chapter 11 Plan of Liquidation For (I) Najeeb Ahmed Khan, (II) Khan Aviation, Inc. and Its Jointly Administered Debtors, and (III) Interlogic Outsourcing, Inc. and Its Jointly Administered Debtors *(With Further Non-Material Modifications)* at § 6.1 *et seq.* (Base Case ECF No. 1602).

unless a federal interest requires otherwise,[7] our Circuit expressed its view of the modest role that § 365 plays, principally in the claims allowance process. *See Leasing Service Corp.* 826 F.2d at 437 ("Thus, rejection or assumption of an executory contract determines only the status of the creditor's claim, i.e., whether it is merely a pre-petition obligation of the debtor or is entitled to priority as an expense of administration of the estate.").

So, to the extent that Crystal Solutions had conveyed some rights to IOI prepetition upon IOI's making benchmark payments or otherwise, any interest in the TaxEx software package that vested in IOI prepetition (i) cannot be undone, and (ii) were transferred to PrimePay under § 363(b) upon entry of the Sale Order. Without deciding the meaning of the Transfer Agreement, the First Amendment to Agreement Regarding Transfer of Rights Related to Software dated Oct. 13, 2013 (Exh. B to Second Abstention Motion) certainly suggests that several phases of the Transfer Agreement might have been completed, *i.e.*, no longer executory, well-before the petition date, which if true, would remove them from the strictures of § 365. Crystal Solutions previously acknowledged that IOI had fully performed under the Transfer Agreement. *See, infra*, n. 14,

On the other hand, if the court accepts OneSource's view, advanced throughout this proceeding, that the Transfer Agreement qualified as an executory contract under § 365, the "deemed rejection" that occurred upon confirmation took the wind out of OneSource's sails. The agreement is no longer executory, and must be regarded as breached under §

---

[77] *See* 28 U.S.C. § 1652; *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1666 (2019) (Sotomayor, J., concurring) ("baseline inquiry remains whether the licensee's rights would survive a breach under applicable nonbankruptcy law"); *Butner v. United States*, 440 U.S. 48 (1979) (Bankruptcy Act generally leaves the determination of property rights in the assets of a bankrupt's estate to state law). The court endorses the notion that courts should construe the Bankruptcy Code to do as little violence to nonbankruptcy law as possible, consistent with Congressional objectives expressed in Title 11.

365(g) (assuming it were executory on the petition date). *Mission Prod.*, 139 S. Ct. at 1662. The deemed rejection foreclosed the possibility of assumption (and assignment) under § 365, as § 365(f)(2) makes clear, but did not necessarily preclude the transfer of whatever interest remained in the estate after rejection. The Supreme Court in *Mission Products* clearly interpreted the effect of rejection narrowly, treating it as a breach that gives rise to a prepetition claim under § 365(g) and § 502(g), but looking to non-bankruptcy law for guidance on other post-breach ramifications.

This means that by the time the court granted the 9019 Motion, IOI held the rights under a contract (the Transfer Agreement) that was no longer executory --either because IOI fully performed prepetition or because the deemed rejection constituted a breach relieving OneSource of future performance obligations. Significantly, the rejection (if it occurred) did relieve IOI of any further duty to perform under the Transfer Agreement (other than to answer in damages through the claims allowance process),[8] but rejection did not effect a rescission of the Transfer Agreement: the agreement remained in existence, subject to the state law consequences of IOI's breach.

Assuming the Transfer Agreement fell within the scope of § 365 on the petition date and was rejected (*i.e.*, breached) at confirmation, the remaining question is whether IOI might nevertheless assign its rights under the assumedly breached contract through the quit claim transaction described in the 9019 Motion.

The parties offered no reason, and the court perceives none, why it should interpret § 365 as the exclusive avenue for transferring contract rights. First, § 365 applies by its

---

[8] After consulting with the claims agent in this case, the Clerk advises that OneSource has not timely filed a proof of claim, contrary to what the court would expect from a well-counseled party who genuinely believed its contractual arrangement with a debtor was executory, particularly given the substantial dividend for unsecured creditors predicted at confirmation.

terms only to executory contracts, and even then, does not disturb settled, non-executory components of such contracts. *Shelbyville Rd. Shoppes,* 775 F.3d at 797.  As to a debtor's remaining executory duties, the deemed breach that occurs upon rejection resolves those aspects of the arrangement by giving the non-debtor party a prepetition claim -- permitting the estate to treat the claim as a prepetition obligation.  *See Leasing Service Corp.* 826 F.2d at 437. The reorganization-related role of § 365 -- allowing a debtor to cherry pick or shed prepetition contractual arrangements -- has also run its course in this case, culminating in a confirmed plan two months ago. And, because *Mission Products* teaches that a rejected executory contract survives rejection, it stands to reason that whatever legal or equitable interests a debtor has under the rejected contract, subject to state law defenses under the contract occasioned by the breach, remain within the estate.  Section 363, of course, allows a debtor to transfer property with court approval, as IOI purported to do under the Sale Order or the Rule 9019 settlement, or both, and § 363(*l*) confirms that contract-related property rights may be conveyed under § 363, otherwise there would be no point in making transfers under § 363 subject to § 365 governing executory contracts. As the Third Circuit recently observed, "if the contract is not executory, it can be sold to a § 363 buyer like any other liability or asset." *Spyglass Media Group, LLC v. Bruce Cohen Productions (In re Weinstein Co. Holdings LLC)*, 997 F.3d 497, 505 (3d Cir. 2021). In light of all this, the court reads § 365 and § 363 as serving different purposes, leaving § 365 to address executory contracts while they remain executory and § 363 to address contracts that were not executory (or are no longer executory), because rejected or for some other reason.

OneSource opposes this construction, principally by arguing that (i) a debtor's rights under an executory contract are not included within a bankruptcy estate unless and

until the debtor assumes the contract under § 365, and (ii) a debtor may assign an executory contract only under § 365, *only* after assumption, and not without OneSource's consent, given the supposed nature of the Transfer Agreement.   Taking the first point first, OneSource argues that because IOI never assumed the Transfer Agreement, the Liquidating Trustee, as the representative of the bankruptcy estate, had no interest to assign.  Although OneSource cites a decision of the Ninth Circuit for its position,[9] the court rejects the argument as inconsistent with the Bankruptcy Code, as opposed to the Bankruptcy Act.

It is true that, under the Bankruptcy Act, courts generally regarded the trustee's decision to assume an executory contract as a perquisite to including the executory contract rights within the bankruptcy estate.  A leading bankruptcy treatise, reciting the legislative history of § 365, puts it this way:

> There was one feature of the law as applied to executory contracts that distinguished them from all other property that might or might not be burdensome. It was said that, contrary to the usual rule, the title to the bankrupt's executory contracts or leases (which were included in that category) did not vest in the trustee as of the time prescribed in Section 70a, but rather vested only upon the affirmative act of adoption, though with retroactive effect so that such adoption related back to the time specified in Section 70a.

3 Collier on Bankruptcy ¶ 365.LH (16th 2021). The expansive language of § 541, however, effected a sea change in bankruptcy practice, including with respect to executory contracts, bringing into the bankruptcy estate as of the commencement of the case, "all legal and

---

[9] OneSource cites *In re Qintex Entertainment, Inc*.,  950 F.2d 1492 (9th Cir. 1991), for the proposition that an executory contract does not become property of the bankruptcy estate until assumption under § 365. That opinion, however, has not been cited in our Circuit, probably because it is at odds with the broad sweep of § 541's text and legislative history, and our Circuit's more limited view of the role of § 365, noted above.

equitable interests of the debtor in property," including leasehold interests and contract rights, subject to special provisions in § 365 governing executory contracts and unexpired leases. *In re Sturgis Iron & Metal Co., Inc.*, 420 B.R. 716 (Bankr. W.D. Mich. 2009) (contrasting treatment of executory contracts under the Bankruptcy Act); *In re Chateaugay Corp.*, 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) ("Contractual rights are intangible property which is included within the definition of the estate of the debtor.").

Regarding OneSource's second point of contention – that § 365(c) and (f) bar the court from finding an assignment either under the Sale Order or the Settlement Agreement, the court is not persuaded.  Putting aside for the moment the two provisions within the Transfer Agreement that clearly contemplate assignment "to any party acquiring a material portion [of] the business and/or assets of [IOI] or its affiliates," or "to a successor of [IOI's] business or an acquirer of [IOI's] assets,"[10] the court observes that the prohibitions in § 365 apply only to *executory* contracts, but after the rejection that occurred upon plan confirmation, the Transfer Agreement is no longer executory – it is breached.  OneSource may be relieved of any future performance, and IOI's sole duty is to answer in damages. *Mission Prod.*, 139 S. Ct. at 1662. Whether the Transfer Agreement was executory on the petition date or not,[11] OneSource at most holds a claim against IOI for contract damages, and a prepetition claim at that.  11 U.S.C. §§ 365(g) and 502(g).  The fact that OneSource has not timely asserted this right by filing a proof of claim, *see supra* at n. 8, does not affect the analysis.

---

[10] *See* Transfer Agreement at ¶¶ 1 & 6.

[11] Post-petition circumstances may render a formerly executory contract no longer executory.  See *Hertzsberg v. Loyal American Life Ins. Co. (In re B & K Hydraulic Co.)*, 106 B.R. 131 (Bankr, E.D. Mich. 1989) (citing *In re Pesce Baking Company, Inc.*, 43 B.R. 949 (Bankr. N.D. Ohio 1984)).

Section 365 has fulfilled its primary mission, which the Sixth Circuit teaches is to determine the status of OneSource's claim, either general unsecured or priority. *Leasing Service Corp.*, 826 F.2d at 437. As for § 365's role in the reorganization, the reorganization is largely complete. And, as the Supreme Court recently held, executory contracts do not simply go away upon rejection: the effect under § 365 is limited to a breach. *Mission Prod.*, 139 S. Ct. at 1662 (rejection is breach, and has only its consequences). There can be no doubt that a debtor's prepetition breach of contract can render a contract no longer executory, and because Congress instructs the court to treat rejection as a prepetition breach, *id.*, the court sees no reason to treat a rejected contract differently with respect to assignment or transfer under § 363. Both may be assigned under § 363.

The court's construction of §§ 363 and 365 as providing alternate paths to assignment does not deprive OneSource of any protections available under § 365. That section protects a non-debtor party in several ways. In the case of assumption, § 365 protects a non-debtor party by conditioning assumption on the cure of most defaults (other than those related to the fact of filing); in the case of assignment, it conditions assignment on cure and adequate assurance of future performance. Because assignment "under" § 365 relieves the debtor of its duty after the assignment[12] and deprives the non-debtor of defenses based on a debtor's breach, § 365 provides special protection for assignment of contracts with respect to which "applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor…" 11 U.S.C. § 365(c)(1)(A). OneSource appears adamant

---

[12] "Assignment by the trustee to an entity of a contract or lease *assumed under this section* relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k) (emphasis added).

about perpetuating its supposed rights under § 365(c) to prevent assignment to PrimePay -- rights that may improve its position in bankruptcy compared to its contract rights outside of bankruptcy,[13] but the court will not permit OneSource to exploit the protections of § 365(c) after the purposes of that section have been served in the main bankruptcy case.

Returning to the current matter, regardless of whether we suppose the Transfer Agreement was not an executory contract (as PrimePay argues), or was executory but is now rejected (as OneSource must allow), the court finds that IOI effected a transfer of its rights in the Transfer Agreement and the TaxEx software package, just not by operation of § 365. To this extent the court agrees with OneSource -- without assumption of an executory contract under § 365 there cannot be an assignment under § 365. *See* 11 U.S.C. § 365(f)(2)(A). But this conclusion does not preclude a finding that a debtor may assign a rejected contract under § 363 if an entity is willing to take the assignment. If OneSource is correct that IOI may have breached the Transfer Agreement prepetition, as OneSource argued in its Rule 56(d) motion in the Indiana Litigation, the Third Circuit's observation in a recent controversy under §§ 363 and 365 seems apt: "the counterparty with nothing material left to do on the contract should simply be grateful that someone agreed to buy its contract and assume obligations after the sale's closing." *Weinstein Co.*, 997 F.3d at 505-06.

When all is said and done, the court is satisfied, and finds, that IOI parted with all interest in the Transfer Agreement and the TaxEx software package, either under the Sale Order, or when the court granted the 9019 Motion, and it is unnecessary to decide whether

---

[13] The anti-assignment provisions of §365(c) arguably apply "whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties," though outside of bankruptcy, Crystal Solutions clearly contemplated IOI's assignment of rights under the Transfer Agreement.

the Transfer Agreement qualified as an executory contract during the bankruptcy because by the time the court granted the 9019 Motion, the Transfer Agreement (if it ever qualified as an executory contract) was rejected, no longer executory, and therefore susceptible to transfer, albeit not under § 365.

This conclusion, coupled with the fact that OneSource did not timely file a proof of claim, simplifies the abstention decision considerably: the court now agrees with PrimePay (and IOI) that resolving the dispute between OneSource and PrimePay about the meaning of the Transfer Agreement will have no impact on IOI or the bankruptcy estate or proceedings. Although the court had hoped to provide an answer to the question of whether the Transfer Agreement was an executory contract on the petition date, it is no longer necessary to do so, and more to the point with respect to abstention, doing so would require the court to interpret the Transfer Agreement, at least to some extent, which is precisely what IOI and OneSource called upon the District Court to do in the Indiana Litigation.

The court does not doubt that it has constitutional authority to classify contracts as executory or not for purposes of § 365, but it also considers the dispute at issue in the Indiana Litigation (the meaning of the Transfer Agreement generally) to be a noncore matter, and one with respect to which PrimePay has withheld consent to entry of final judgment. This point clearly weighs in favor of abstention, because no one has questioned the U.S. District Court's diversity jurisdiction to resolve the Indiana Litigation, and after the court's conclusion that IOI no longer has any stake in the dispute, the pendency of the IOI bankruptcy proceedings is no impediment to the District Court's exercise of that jurisdiction. Other factors from *Delphi Auto. Sys.,* and similar cases also point toward abstention, including the predominant role Indiana law will play in interpreting the Transfer

Agreement, the absence of bankruptcy issues (now that the court has put the § 365 issues aside), the burden on this court's docket of hyper-litigious parties, the exclusive role of nondebtor parties (OneSource and PrimePay) after confirmation of IOI's plan, and the transfers described herein. *See generally Delphi Auto. Sys.,* 519 F. Supp. 2d at 670–71. It also appears that OneSource's commencement of this adversary proceeding, its assertion of the anti-assignment provision of § 365(c) (compared to the more liberal assignment language of the Transfer Agreement), and its abrupt abandonment of its prior agreement to return to the District Court litigation, certainly suggests forum shopping and a studious effort to delay a resolution on the merits.

Accordingly, the court will abstain from any further role in resolving the controversy between OneSource and PrimePay.


## IV. CONCLUSION AND ORDER

Today's decision clears the way for the parties to resume the Indiana Litigation, where the District Court will be free to determine the meaning of the Transfer Agreement, whether or to what extent the agreement was performed by either party, the competing interests of the parties in the TaxEx Software, the existence, or not, of prepetition breaches, and other questions encompassed with the pleadings in that case, untethered from these bankruptcy proceedings.  The decision to abstain also moots PrimePay's pending summary judgment and discovery motions, leaving those issues to be raised anew in the Indiana Litigation if the parties are so advised.

The court anticipates, or at least hopes, that the parties' detour through this adversary proceeding will not turn out to have been completely wasteful, considering that

they will likely be able to use the discovery materials that have been produced over the last few weeks including, presumably, the Asset Purchase Agreement Between Crystal Solutions, Inc. and OneSource Virtual, Inc., dated as of Sept. 15, 2015, in which OneSource's predecessor in interest apparently acknowledges that IOI fully performed under the Transfer Agreement. *See* Reply in Support of PrimePay, LLC's Motion for Abstention (Adv. Pro. ECF No. 62) at Exh. A.[14] Regardless, however, the court is convinced that the nexus between IOI's proceedings under Title 11 and the disputes related to the Transfer Agreement has been severed now that non-debtor PrimePay and OneSource are the real parties in interest under the Transfer Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. Except as otherwise provided in footnote 14, the Second Abstention Motion is GRANTED to the extent provided herein;

2. All other pending motions are DENIED as moot;

3. Within 28 days after entry of this Memorandum of Decision and Order the parties shall file instructions for the retrieval, preservation, or disposal of the documents previously filed under seal, but in the absence of such timely instructions the Clerk may

---

[14] The court would be remiss if it did not express surprise and disappointment upon learning, as seems to be the case, that Messrs. Alibhai and Humphrey (counsel for OneSource) have pursued their executory contract arguments since the inception of this proceeding with full knowledge of the provisions of the Asset Purchase Agreement (referred to in the Complaint at ¶ 13 but not attached thereto) in which their client's predecessor in interest described IOI's obligations under the Transfer Agreement as fully performed. Of course, although the statements by Crystal Solutions within that recently disclosed document are quite damning to OneSource's theory of its case, they are not necessarily dispositive. Nevertheless, they do suggest a lack of candor to the court which the court will consider addressing separately by reserving jurisdiction for thirty-five days for this limited purpose, notwithstanding the decision to abstain from reaching the merits of OneSource's Complaint.

dispose of the sealed documents in a manner that protects the potentially privileged communications contained therein, including by, but not limited to, shredding them; and

4. The Clerk shall (i) promptly enter judgment dismissing the complaint without prejudice, and (ii) close the adversary proceeding thirty-five days after entry of this Memorandum of Decision and Order, unless a proceeding as contemplated in footnote 14 is then pending.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Rule 9022 and LBR 5005-4 upon Jamil N. Alibhai, Esq., John R. Humphrey, Esq., Darius Gambino, Esq., and Steven L. Rayman, Esq.

**IT IS SO ORDERED.**

**Dated July 30, 2021**



_____
Scott W. Dales
United States Bankruptcy Judge